UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY, ALLSTATE              Index No.: 15-CV-7149
PROPERTY & CASUALTY INSURANCE COMPANY,                      (SJ) (CLP)
ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY and ALLSTATE
NORTHBROOK INDEMNITY COMPANY

                            Plaintiff(s),

  -against-                                                                           **AFFIRMATION IN OPPOSITION**

HARVEY FAMILY CHIROPRACTIC, PHYSICAL
THERAPY & ACUPUNCTURE, PLLC, RICHARD
HARVEY, DC, JIN HWANGBO, L.Ac., and
BERVIN NELSON BRUAL, P.T.,

                            Defendant(s),
------------------------------------------------------------------------------X

**LOUIS F. CHISARI**, an attorney duly licensed to practice law before the United States District Court for the Southern District of New York, pursuant to the provisions of 28 U.S.C. § 1746 and under the penalties of perjury does hereby affirm as follows:

1. I am a member/partner of the law firm of MARCOTE & ASSOCIATES, P.C., attorney(s) for the defendant(s), HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, RICHARD HARVEY, DC, JIN HWANGBO, L.Ac., and BERVIN NELSON BRUAL, P.T. (hereinafter collectively referred to as 'Defendant(s)'), and as such I am fully familiar with all the facts and proceedings heretofore had herein.

2. The source of this information and knowledge is from a review of the file referable to this action which is maintained by the law firm of MARCOTE & ASSOCIATES, P.C. and my personal first hand knowledge of the facts stated herein.

3. This affirmation is respectfully submitted in opposition to the plaintiff(s), ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY and ALLSTATE NORTHBROOK INDEMNITY COMPANY (hereinafter referred to collectively as the 'Plaintiff(s)') motion pursuant to F.R.C.P. § 65 for an 'Order' temporary restraining the following: 1) proceeding with any 'No-Fault' collections actions currently pending between the Defendant(s) and the Plaintiff(s) until resolution of the instant matter; and 2) filing any new arbitration proceeding or civil actions seeking the collection of 'No-Fault' benefits from the Plaintiff(s) until resolution of the instant matter..

4. It should be noted by this Court that as of the date of this 'Affirmation in Opposition' the Plaintiff(s) have still failed to serve the Defendant(s) with the 'Summons & Complaint' in the instant matter.  Your affivant in open Court on the day the initial application for a 'Temporary Restraining Order' was denied, stated that he would accept service of said 'Summon & Complaint' on behalf of the Defendant(s) and the Court directed Plaintiff(s) counsel to serve said papers on my office.

5. The Plaintiff in its moving papers attempts to state facts to mislead and confuse this Court, when in fact the Defendant(s) have taken no actions that were either illegal and/or meant to mislead the State of New York or any insurance carrier in their treatment of New York 'No-Fault' patients.

6. Annexed hereto as Exhibit '1', dated January 31, 2013, Exhibit '2', dated March 21, 2013 and Exhibit '3', dated December 5, 2013 are the 'Examination Under Oath' of

      one of the principles of the defendant, HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, Richard G. Harvey, DC. In said transcripts he explains the business operations of the defendant, HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, and how they retained an attorney and filed all necessary paperwork and form with the State of New York. Furthermore, it should be noted by this Court that the Plaintiff(s) failed to include this transcript with their moving papers and it should also be noted that these 'EUO's were taken over a year on 2013 and the other principles 'EUO' were taken in early 2014.

7. If there was such an emergency then why did the Plaintiff(s) wait almost a full three (3) years to file the instant action and move this Court for a restraining order. In that time period hundreds of 'No-Fault' cases with the Plaintiff(s) and the Defendant(s) have been resolved, either by trial and/or settlement and not once did the Plaintiff(s) thru any of their different counsels raise any issue as alleged in the instant action.

8. Furthermore, based upon the the documents filed with the State of New York the defendant, HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, was issued the proper license to operate. Annexed hereto as Exhibit '4' are the 'Articles of Organization' filed with the State of New York.

9. Annexed hereto as Exhibit '5' is a copy of the 'Operating Agreement of Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC', which were filed with Exhibit '4'. Once again it should be noted by the Court the Defendant(s) were not hiding anything for the State of New York.

10. Also, when a member left the defendant, HARVEY FAMILY CHIROPRACTIC,

PHYSICAL THERAPY & ACUPUNCTURE, PLLC, the Defendant(s) followed the proper legal procedures and filed the proper paperwork to effectuate said change. Annexed hereto as Exhibit '6' is a copy of the ''Membership Surrender & Indemnification Agreement', which were filed in connection with Exhibit '4'. Once again it should be noted by the Court the Defendant(s) were not hiding anything for the State of New York.

11. In accord with Exhibit '6' the Defendant executed 'First Amended Operating Agreement of Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC', annexed hereto as Exhibit '7' is a copy of said document.

12. Then when the the membership of the defendant, HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, changed due to personal reasons of the parties involved the parties executed a 'Second Amended Operating Agreement of Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC', annexed hereto as Exhibit '8' is a copy of said document.

13. As it can be seen by the 'Examination Under Oath' of the defendant, Richard G. Harvey, DC and the related documents executed and filed by the Defendant(s) that they were not hiding anything from the State fo New York and/or the insurance carriers.

14. Allstate's action is based on the New York Court of Appeals ruling in State Farm Mut. Auto Ins. Co. v. Mallela, 4 N.Y.3d 313 (2005). The theory of Allstate's action is that defendant Harvey Family Chiropractic Physical Therapy & Acupuncture, PLLC, ("the defendant PLLC") is not properly owned and operated by medical professionals; that defendant Richard Harvey, D.C., Jin Hwangbo, L.A.c., and Bervin

Nelson Brual, P.T., ("the physician defendants") who are the owners of the defendant PLLC are "paper owners"; and that the defendant PLLC was designed to wrongfully collect reimbursement from Allstate for claims under New York's no-fault insurance program. There is no allegation that necessary medical services were not provided for the fees charged.

15. To be discussed more fully below, there is simply no factual or legal basis for Plaintiff(s) to obtain such extraordinary relief. Moreover, Plaintiff(s) has utterly failed to satisfy the requirements for establishing its entitlement to the extraordinary relief of a Temporary Restraining Order.

16. First, as the facts will herein reflect, there is scant chance that Plaintiff(s) will ultimately prevail on the merits against the Defendant(s).

17. Second, given that the relief it seeks is ultimately monetary in nature, and given its substantial economic heft, Plaintiff(s) cannot claim that it will suffer irreparable harm if the requested relief is not granted.

18. Third, Plaintiff(s) cannot show that the balance of the equities tips decidedly in its favor.

19. Fourth, and just as fundamentally, under the Federal Arbitration Act ("FAA"), Plaintiff(s) cannot prevent arbitrations between it and the defendant PLLC from proceeding. Thus, its motion for a Temporary Restraining Order must be denied.

20. Plaintiff(s) moves to enjoin the defendant PLLC from proceeding with pending civil actions and arbitrations and from filing new actions and/or arbitrations seeking reimbursement of no-fault benefits. However, Plaintiff(s) proffers conclusory, speculative arguments in an attempt to avoid the nuisance or costs of proceeding with

the civil actions and arbitrating disputes arising out of reimbursement payments owed to the defendant for services rendered to Plaintiff(s) policyholders. Plaintiff(s) fails to meet the high burden which exists to obtain the extraordinary remedy it seeks and also fails to demonstrate that the filing of new civil actions and/or arbitration claims could cause Plaintiff(s) anything more than monetary damages, which ultimately could be remedied at the close of this case or a trial, if need be.

## ARGUMENT

**PLAINTIFF(S) HAVE FAILED TO ESTABLISH ITS ENTITLEMENT TO A TEMPORARY RESTRAINING ORDER**

21. Temporary restraining orders and preliminary injunctions are among "the most drastic tools in the arsenal of judicial remedies," and accordingly, such extraordinary and drastic remedies must be used with great care. Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007).

22. To obtain this relief, Plaintiff(s) must demonstrate: (1) that it will suffer irreparable harm in the absence of the injunction; and (2) either, (a) that it is likely to prevail on the merits, or (b) that there are serious questions going to the merits and that the balance of the equities tips decidedly in its favor. See Hyde v. KLS Prof. Advisors Group, LLC, 500 Fed. Appx. 24, 25 (2d Cir. 2012)(unpublished); see also Accenture LLP v. Spreng, No. 10 CIV 9393 VM, 2010 WL 5538384, at *2 (S.D.N.Y. Dec. 23, 2010) (Because the defendant failed to meet its "high burden" for an injunction the court refused to enjoin a second arbitration despite the fact that the plaintiff had previously secured two victories against the defendant in a prior arbitration and may be forced to expend additional time and resources to reargue overlapping issues in

the second arbitration).

23. Here, Plaintiff(s) fails to meet its high burden justifying the imposition of such a drastic remedy of a temporary restraining order. First, Plaintiff(s) fails to demonstrate a likelihood of success on the merits. Second, Plaintiff(s) fails to demonstrate that it will suffer any irreparable harm. Third, Plaintiff(s) fails to demonstrate that the balance of the equities tips decidedly in its favor. Lastly, an issuance of a stay in this case would violate the FAA.

## POINT I.

## THERE IS NO LIKELIHOOD THAT PLAINTIFF(S) WILL SUCCEED ON THE MERITS

24. To establish a successful RICO claim, Plaintiff(s) must establish three elements. See DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001). First, Plaintiff(s) must prove a violation of the RICO statute, which makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Second, Plaintiff(s) must establish "an injury to business or property." DeFalco, 244 F.3d at 305 (internal quotation marks omitted). Finally, Plaintiff(s) must show "that the injury was caused by the violation of Section 1962." Id.

25. Plaintiff(s) fails to demonstrate the necessary elements to establish a successful RICO claim against the defendants. To the contrary, Plaintiff(s)' allegations against the Defendant(s) are categorically false. Plaintiff(s) bases its allegations upon the

          Examination Under Oath ("EUO") transcripts of Jin Hwangbo, L.Ac., and Bervin Brual, P.T., which are neither signed nor notarized. As a result, the transcripts lack foundation and are inadmissible.

26. Plaintiff(s) cannot demonstrate that Defendant(s) violated the RICO statute or engaged in any activities whatsoever that caused Plaintiff(s) any injury. At all times the physician Defendant(s) properly oversaw the conduct of the Defendant PLLC's health care professionals, and ensured that the Defendant PLLC billed only for the medically necessary services it provided. The Defendant PLLC was not a "RICO enterprise," but rather a legitimate business that operated pursuant to the highest professional standards. Because Plaintiff(s)' common law fraud and unjust enrichment claims are premised on the same allegations as its RICO claim, those allegations are similarly unlikely to succeed on the merits.

## POINT II.

**PLAINTIFF(S) HAVE FAILED TO ESTABLISH THAT IT WILL BE IRREPARABLY HARMED IN THE ABSENCE OF INJUNCTIVE RELIEF**

27. A showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." Hyde, 500 Fed. Appx. at 25 (citing Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)). "To determine whether [Allstate] has shown irreparable harm, 'the court must actually consider the injury [Allstate] will suffer if [it] loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" Id. (citing Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010)). Further, in

order for Allstate to satisfy the irreparable harm requirement, Allstate must demonstrate that absent injunctive relief it will suffer an injury that is "neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Faiveley Transport Malmo AB, 559 F.3d at 118 (citing Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir.2007) (internal quotation marks omitted)). Here, Allstate cannot come close to meeting this standard.

28. Plaintiff(s) offer no proof whatsoever that permitting the Defendant PLLC to continue its civil court actions and/or arbitration claims with Plaintiff(s) will cause Plaintiff(s) irreparable harm. Plaintiff(s)' sole contention is that the Defendant PLLC may be successful in the pending matters.

29. However, Plaintiff(s) does not explain that even if required to pay as a result of those pending matters why Plaintiff(s) cannot be made whole by any judgment in this action, nor how a company its size would be irreparably harmed.

30. As the Second Circuit in Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Limited, 437 Fed. Appx. 57 (2d Cir. 2011), recently explained:

> **"To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. . .Thus, "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."**
> 
> **"Here, the record amply supports the district court's finding that no irreparable harm will result from the denial of preliminary injunctive relief. There is no evidence in the record that Bisnews cannot be fully compensated for whatever harm, if**

>    **any, it suffers from Aspen's alleged breach of the contract through the payment of money damages".** Id.
>
>    See also Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112 (2d Cir. 2005); Sweeney v. Bane, 996 F.2d 1384 (2d Cir. 1993).

31. Similarly, here, Plaintiff(s)' asserted "harms" are not irreparable because any alleged losses can be remedied by monetary damages. See Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); see also CRP/Extell Parcel I, L.P. v. Cuomo, 394 Fed. Appx. 779, 781 (2d Cir. 2010) (unpublished) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm.").

32. Plaintiff(s) can raise any defenses in the civil court actions and arbitrations that it believes are valid. As to the resulting cost associated with litigating this action while the civil court actions and arbitrations are pending, it is Plaintiff(s) that elected to institute a "second front" in contesting the Defendant PLLC's claims, and it has not shown why this burden that it created will cause it irreparable harm, especially considering that Plaintiff(s) is a billion-dollar corporation.

33. While Plaintiff(s) claims that the single holding in Allstate Insurance Company v. Hishman Elzanaty, 929 F. Supp. 2d 199 (E.D.N.Y. 2013) justifies a finding of irreparable harm in this case, the facts of Elzanaty are entirely distinguishable from here. In Elzanaty, the RICO case had been pending for years, there had been

significant procedural history, and the arbitrations which were stayed had been asserted by the defendant as counterclaims in the district court action, so the claims were pending in two different forums. This case has just begun, and critically, the claims sought to be stayed are not before this Court. The simple fact that none of the defendants in this case has chosen this Court as the forum to pursue its claims renders Elzanaty completely inapplicable.

34. And while Plaintiff(s) also claims that several New York state cases support the holding in Elzanaty, Allstate ignores that the court in Government Employees Ins. Co. v. Grand Med. 11 Supply, Inc., No. 11 Civ. 5339, 2012 WL 2577577, *7 (E.D.N.Y. July 4, 2012), considered many of those cases and distinguished them on the basis that "under the FAA, I cannot deny a party its contractual right to arbitrate because I believe considerations of efficiency or the goal of avoiding inconsistent judgments should take precedence." Id.

35. Further, Plaintiff(s)'s claim that AIU Ins. Co. v. Deajess Med. Imaging, PC, 24 Misc. 3d 161 (Nassau Co. 2009), supports the holding in Elzanaty is misplaced, as there is no discussion whatsoever in that case about whether and under what circumstances a stay should be granted.

36. Furthermore, Plaintiff(s) argues that it will be irreparably harmed absent a stay because it will be forced to "litigate these related actions while the instant declaratory judgment is pending" and because Plaintiff(s) could potentially be harmed if it were "made to make repetitious arguments in many arbitrations and/or litigations." While potentially cumbersome and piecemeal, such alleged "harms" are far from irreparable and sound more of a desire to avoid mere inconvenience than irreparability. The fact

      that a party might have to engage in multiple civil court actions and arbitrations does not automatically constitute irreparable harm.

37. Plaintiff(s)' alleged harms are also speculative and remote. In effect, Plaintiff(s) argues that all pending litigations and arbitrations involving the Defendants in this case should be stayed because this court may or may not eventually rule at some uncertain date that the Defendant PLLC is illegally incorporated and controlled. Not only is this harm speculative and one that can be remedied by monetary damages, but also for reasons discussed above, it is highly unlikely that Plaintiff(s) will prevail in its suit against Defendants.

38. Furthermore, to assert that all pending lower court cases (or arbitrations) should be bound by the potential and unlikely findings of another court, on the off chance that the court issues a ruling that could potentially effect whether Plaintiff(s) owes the Defendant PLLC payments for services rendered to policy holders is nonsensical. Lower courts regularly issue rulings in cases that may be overruled or overturned based on a binding court's later ruling in a contemporaneous case. The fact that a binding court may later issue a ruling that would affect the outcome of the lower court is always a possibility. And yet, lower courts do not regularly stay cases based on this speculative chance. Under Plaintiff(s)' rationale, any time a decision (whether by a lower court or arbitrator) could be adversely affected by a ruling of another court, the lower court case would necessarily be stayed for fear of "irreparable harm." This is not and has never been the law or sufficient to demonstrate irreparable harm.

**POINT III.**

## THE BALANCING OF THE EQUITIES MANDATES THAT PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION BE DENIED

39. The party seeking a preliminary injunction must demonstrate that a balance of the equities favors the movant's position. Plaintiff(s)' only argument is that it will be forced to spend "time and expense" in litigating the civil court actions and/or arbitration claims.

40. Granting of the preliminary injunction would actually prejudice the Defendant(s) who have rendered medical treatment but their bills remain overdue and outstanding. In addition, the Defendant(s) (the Plaintiff's in the civil court actions), would be forced to wait an infinite amount of time to have their cases resolved. This would especially be unjust and prejudicial to the Defendant(s).

41. Thus, if the preliminary injunction is granted, the Defendant(s) would unjustly have to wait for years to have the pending civil court actions determined. Clearly, the balancing of the equities favors the denial of Plaintiff(s)' application for a preliminary injunction.

## POINT IV

## THE ISSUANCE OF A STAY OF ARBITRATION WOULD VIOLATE THE FAA

42. Plaintiff(s)' motion also should be denied because, under the FAA, the Court lacks the power to either enjoin Defendant(s) from submitting any no-fault claims to arbitration or stay the claims, which have already been submitted but have yet to be adjudicated. Pursuant to the no-fault insurance agreement between the Defendant PLLC and Plaintiff(s).

43. Defendant(s) have the right to submit any disputed claims to arbitration. In fact, New York law requires that the agreement provide the Defendant PLLC with that right. See New York Insurance Law § 5106(b) ("[e]very insurer shall provide a claimant with the option of submitting any dispute ... to arbitration").

44. Additionally, it is well settled that under the FAA a district court cannot enjoin the arbitration of claims covered by a no-fault insurance agreement. As the Court, in considering a motion to compel arbitration, explained:

> **"[U]nder the FAA, I cannot deny a party its contractual right to arbitrate because I believe considerations of efficiency or the goal of avoiding inconsistent judgments should take precedence. The Supreme Court has made clear that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to arbitration on issues as to which an arbitration agreement has been signed." Thus, the FAA compels the arbitration of arbitrable claims where, as here, a party files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums**. Consistent with this precedent, the Second Circuit recently held that a district court lacked authority under the FAA to enjoin the arbitration of claims covered by an arbitration agreement. **Accordingly, I have no power to deny defendants' motion to compel based on these alternative considerations."**

Government Employees Ins. Co. v. Grand Med. Supply, Inc., No. 11 Civ. 5339, 2012 WL 2577577, *7 (E.D.N.Y. July 4, 2012) (internal citations omitted) (emphasis added).

45. And, while in <u>Anderson v. Belend</u> (<u>In re Am. Express Fin. Advisors Secs. Litig.</u>), 672 F.3d 113, 142 (2d Cir. 2011), the Second Circuit found that arbitrations of claims that were not covered by an arbitration agreement could be enjoined, the Second Circuit expressly held:

> **"However, as we have also discussed, the Belands' FINRA Complaint contains various claims not encompassed by, indeed, in certain cases specifically excluded by the Release. Those non Released Claims include claims based on, inter alia, unsuitable investment in technology stocks, misrepresentations and omissions regarding those investments, and claims involving alleged conduct falling outside the Class Period. Because Ameriprise's consent to arbitrate, even as amended (i.e., limited) by the Settlement Agreement, continues to embrace the non-Released Claims, the district court - to that extent only - lacked the authority to enjoin the arbitration of Belands' FINRA Claims. Therefore, we vacate the portion of the Enforcement Order that purported to enjoin the Belands from presenting those claims to the FINRA arbitrators. We remand this matter to the district court for entry of an appropriately limited order enjoining only the arbitration of the Released Claims."** Id.

46. Here, Plaintiff(s) do not allege, nor could they, that the claims for which it seeks a stay are not covered by the arbitration provisions in Plaintiff(s)' agreement with the covered parties, who assigned their claims to the Defendant PLLC, as mandated by New York's no-fault law. Accordingly, the FAA prohibits the issuance of an injunction of the arbitration of those claims.

47. Moreover, as set forth above, Plaintiff(s)' reliance upon Allstate Insurance Company v. Elzanaty, 929 F. Supp. 2d 199 (E.D.N.Y. 2013), to demonstrate that the Court has the power to issue the relief Plaintiff(s) seeks is misplaced. As the Court in Elzanaty explicitly stated, "[T]he Court believes it permissible to agree with Judge Weinstein and thereby concludes that it has the power **under the particular circumstances of this case** to issue the injunction the Plaintiffs are seeking." Elzanaty, 929 F. Supp. 2d at 220 (emphasis added). Indeed, while the Court in Elzanaty temporarily stayed arbitrations of no-fault claims, it stated:

> **"It is no doubt unwise for a Court to simply step in and stay a contractually deserved arbitration merely because the Court sees**

> **a potentially more efficient use of time and resources by litigants, arbitrators, and judges. This is undeniably a slippery slope."**

Elzanaty, 929 F. Supp. 2d at 220 (emphasis added).

48. As stated above, in Elzanaty the Defendant service providers opposing the stay had asserted the very claims it sought to arbitrate as counterclaims in the RICO action. Here, no counterclaims have been asserted in this action relating to the claims whose arbitration Plaintiff(s) seeks to stay. Accordingly, under the FAA there is no basis to stay, even temporarily, the arbitration of no-fault claims that have not yet been adjudicated.

49. Based upon the aforementioned reasons, Plaintiff(s)' motion for a preliminary injunction must be denied.

**WHEREFORE**, it is respectfully requested that the Court issue an order denying the plaintiff(s), ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY and ALLSTATE NORTHBROOK INDEMNITY COMPANY, motion in its entirety and for such other relief as this Court may deem just, proper and equitable.

Dated: Hicksville, New York
February 4, 2016

_____/s/_____
By: Louis F. Chisari, Esq. (LC0383)
Marcote & Associates, P.C.
Attorney(s) for the Defendant(s)
108 New South Road
Hicksville, New York 11801
Tel: (516) 280-2281
Fax: (516) 280-2283
E-Mail Address: Lchisari@marcotelaw.com

## CERTIFICATE OF SERVICE

I, LOUIS F. CHISARI, do hereby certify under the penalties of perjury as follows:

I am an member of the law firm of MARCOTE & ASSOCIATES, P.C., attorney(s) for the within named defendant(s) ,HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, RICHARD HARVEY, DC, JIN HWANGBO, L.Ac., and BERVIN NELSON BRUAL, P.T.  that on the 5th day of February, 2016, I served the within **'Affirmation in Opposition**' and Exhibits upon the attorney(s) record for the Plaintiff(s), by ECF 'Electronic' and on February 5, 2016 upon the attorney(s) of record for the Plaintiff(s), by personally serving a true copy of the same directed to said attorney(s) at:

**STERN & MONTANA, LLP**
Attorney(s) for Plaintiff: ALLSTATE INSURANCE COMPANY, ET AL.
One World Financial Center, 30th Floor
New York, New York 10281

being the address within the State designated by them for that purpose upon the proceeding papers in this action, or the place where they then kept an office, between which places there then was and now is a regular communication by mail. Furthermore, as stated above I personally delivered a copy of this motion and all supporting papers to the office listed above.

_____/s/_____
Louis F. Chisari, Esq. (LC0383)

# UNITED STATES DISTRICT COURT
for the
# EASTERN DISTRICT OF NEW YORK

### INDEX NUMBER: 15-CV-07149

---

ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY and ALLSTATE NORTHBROOK INDEMNITY COMPANY

-against-

HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, RICHARD HARVEY, DC, JIN HWANGBO, L.Ac., and BERVIN NELSON BRUAL, P.T.,

---

## 'NOTICE OF APPEARANCE'

---

### MARCOTE ASSOCIATES, P.C.
*Attorney and Counselors at Law*
Attorneys for Defendant(s):
HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC, RICHARD HARVEY, DC, JIN HWANGBO, L.Ac., and BERVIN NELSON BRUAL, P.T.
108 NEW SOUTH ROAD
HICKSVILLE, NEW YORK 11801
PHONE:(516) 280-2281
FAX:   (516) 280-2283