# OPERATING AGREEMENT
# OF
# HARVEY FAMILY CHIROPRACTIC,
# PHYSICAL THERAPY & ACUPUNCTURE, PLLC

Upon valuable consideration, the persons named below as "Members" hereby covenant and agree to be bound to the following as their PROFESSIONAL SERVICES LIMITED LIABILITY COMPANY OPERATING AGREEMENT dated April ___, 2011 (this "Operating Agreement") for Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC, a professional services limited liability company organized under the laws of the State of New York:

## ARTICLE I

## DEFINITIONS

As used in this Operating Agreement, the following terms are to have the meaning as stated below:

**"the PLLC"** means HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC.

**"PLLC Units" or "Units"** means measures of ownership in the PLLC. The capital structure of the PLLC shall consist of Units all of the same class with equal rights for all purposes under this Operating Agreement.

**"PLLC Member" or "PLLC Members"** means a member or members of the PLLC.

**"PLLC Unit Percentage"** means, with respect to a member of the PLLC, the percentage derived from the following fraction: number of PLLC Units held by such Member divided by the total number of PLLC Units held by all Members (and, thereafter, multiplying said fraction by 100 to arrive at a percentage).

**"State Law"** means the laws of the State of New York.

**"The Profession"** means licensed professionals practicing chiropractic, acupuncture and physical therapy.

**"Vote in interest of PLLC members"** means a vote of the PLLC members in which each member of the PLLC shall have one vote per PLLC Unit possessed; for example, a member possessing 150 PLLC Units would have 150 votes in interest.

**"Supermajority vote in interest of PLLC members"** means a vote of the PLLC members in which each member shall have one vote per PLLC Unit possessed and the number of affirmative votes for any resolution before the members shall be more than

Exhibit 5

66% of the outstanding PLLC Units. For example, if there are 1000 outstanding PLLC Units, 667 affirmative votes are required to achieve a Supermajority vote in interest upon a resolution before the members.

## ARTICLE II

## GENERAL PROVISIONS

**Section 2.1**. Formation. Articles of Organization either already have been filed with the appropriate State office or shall shortly be done so. The Members shall execute or cause to be executed all other instruments, certificates, notices and documents as may now or hereafter be required for the formation, valid existence and, when appropriate, termination of the PLLC as a professional services limited liability company under the laws of the State of New York.

**Section 2.2**. Company Name. The name of the PLLC is "HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY & ACUPUNCTURE, PLLC" or such other name or names as may be selected by the Members from time to time, and its business shall be carried on in such name with such variations and changes as the Members deem prudent.

**Section 2.3**. Purpose of the PLLC. The purpose of the PLLC is to engage in The Profession and, also, activities complimentary to rendering professional services within The Profession which are lawful for professional services limited liability companies organized under the laws of the State of New York.

**Section 2.4**. Place of Business. The business address of the PLLC shall be determined by the Members. The PLLC may from time to time have such other place or places of business, within or without the State of New York, as the Members may decide.

**Section 2.5**. Registered Agent. The registered agent of the PLLC shall be determined by the Members who shall also possess the power to remove or replace a currently serving PLLC registered agent.

**Section 2.6**. Business Transactions of a Member with the Company. A Member may lend money to, borrow money from, act as surety, guarantor or endorser for, guarantee or assume one or more obligations of, provide collateral for, and transact other business with the PLLC and, subject to applicable law, shall have the same rights and obligations with respect to any such matter as a Person who is not a Member.

**Section 2.7**. Company Property. No real or other property of the PLLC shall be deemed to be owned by any Member individually, but shall be owned by and title shall be vested solely in the PLLC.

**Section 2.8**. No Term To Existence. The PLLC's existence shall commence on the date of the filing of the Article of Organization with the appropriate state office and, thereafter, the PLLC's existence shall be perpetual without term.

**Section 2.9**. Accounting Period. The close of the PLLC's year for financial statement and federal income tax purposes shall be as determined by the Members.

## ARTICLE III

## MEMBERS

**Section 3.1**. Members. The name, PLLC Units and PLLC Unit Percentage of the Members are set forth in the below table, which shall be amended from time to time to reflect the admission of new Members.

| Member Name | PLLC Units | PLLC Unit % |
| --- | --- | --- |
| Richard G. Harvey, D.C. | 970 | 97 |
| Ricardo S. Sanahon, Jr. | 20 | 2 |
| Paul S. Wong | 10 | 1 |

**Section 3.2**. Admission of New Members. New members may be admitted to the PLLC by an affirmative Supermajority vote in interest of PLLC members.

**Section 3.3**. Liability of Members. All debts, obligations and liabilities of the PLLC, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the PLLC, and no member shall be obligated personally for any such debt, obligation or liability of the PLLC solely by reason of being a member. However, to the extent applicable law makes a member of this PLLC personally liable for any negligence or misconduct committed by him or her in a professional capacity or by any person rendering professional services under the member's supervision or control, said member shall be so liable. Members of the PLLC do not agree to accept or share the professional liable of other members beyond their investment in the PLLC. This section does not prevent a PLLC member, should he or she so choose, from separately agreeing to guaranty or otherwise become liable for a debt which is also one of the PLLC.

**Section 3.4**. Access to Books and Records of PLLC. Each PLLC member shall have the right to inspect the books and records of the PLLC during normal business hours after the giving of reasonable notice of this intent to the PLLC custodian of said documents and information; however, each member gaining access to the books and records of the PLLC shall hold this information confidential and only use PLLC information for the furtherance of PLLC business and interests or for making investment decisions regarding the member's PLLC interest. Upon withdrawal or departure as a member of an PLLC, a member shall deliver all PLLC books and records in his or her possession to the remaining PLLC members or managers.

**Section 3.5**. Actions by the Members; Meetings; Quorum. The PLLC members may take any action at a meeting in person, by proxy, or without a meeting by written resolution in accordance with Section 3.5(d). Meetings of PLLC members may be conducted in person or by telephone conference. A voting proxy given by an PLLC Member to another person must be in writing.

Voting. Each PLLC member shall be entitled to vote upon all matters for which PLLC members have the right to vote. All PLLC member votes shall be tallied by interest under which each member shall be entitled to one vote for each PLLC Unit possessed (for example, a member possessing 150 PLLC Units shall be entitled to 150 votes upon any matter submitted to the PLLC Members for a vote). Each vote per PLLC Unit shall carry the same weight and have the same value, for voting purposes, as every other PLLC Unit. Should state law create statutory situations where PLLC member votes are to be taken on a one vote per member basis, votes per member (as opposed to per PLLC Unit interest) shall be limited to those specific circumstances under which state law requires such a vote.

Unless another percentage is given elsewhere in this operating agreement or by state law, all PLLC member votes on any matter shall require an affirmative vote in interest by PLLC members of PLLC Unit in excess of 50% of the outstanding total to pass or approve the motion, resolution, or otherwise take action by the PLLC members. For example, if there are 1000 PLLC Units outstanding, a vote of 501 PLLC Units in favor of a resolution is required for its passage unless the resolution involves a matter for which this operating agreement or state law requires a higher percentage. Any action required or permitted to be taken at any meeting of the Members may be taken without a meeting if Members with the percentage of votes (per PLLC units) sufficient to approve the action pursuant to the terms of this Agreement resolve thereto in writing and the writing or writings are filed with the PLLC records of actions taken by Members. In no instance where action is authorized by written resolution shall it be required that a meeting of Members be called or notice be given; however, upon passage, a copy of the action taken by written resolution of the members shall be sent promptly to all PLLC members.

Meetings of Members may be called by any PLLC member, or members, collectively holding 25% or more of the outstanding PLLC Units upon seven (7) days written notice to the other PLLC members. Notice of a meeting called for hereunder may be made by standard U.S. mail, electronic mail, or facsimile transmission and shall contain the time, place, and purpose of such meeting. A quorum for any action to be taken at a meeting of PLLC members shall be PLLC members present (in person, via telephone, or by proxy) holding more than 50% of the PLLC Units. Any Member may through a written instrument waive the right to receive prior notice of a meeting of the Members as described herein.

Notwithstanding any other provision of this Agreement, the following actions shall require a Supermajority vote in interest of the PLLC Members:

i. any merger, consolidation or other business combination;

4

ii. sale or other disposition of substantially all the assets of the PLLC;

iii. filing of a petition or commencing other proceedings seeking reorganization, liquidation, arrangement or other similar relief under any federal or state law relating to bankruptcy or insolvency;

iv. the amendment or modification of any provision of this Agreement; the issuance of additional PLLC Units (other than those issued pursuant to the founding of the PLLC as set forth in Section 3.1 of this operating agreement) to any Member or other person;

v. the removal of any Member;

vi. the decision to appoint managers for the PLLC under Article IV hereof.

**Section 3.6**. Power to Bind the PLLC. No PLLC member or group of members acting in their individual capacity—separate and apart from action as PLLC members pursuant to this operating agreement—shall have any authority to bind the PLLC to any third party with respect to any matter.

**Section 3.7**. Members who are not individuals. Each Member who is an artificial entity or otherwise not an individual hereby represents and warrants to the PLLC and each Member that such Member is: (a) duly incorporated or formed (as the case may be), (b) validly existing and in good standing under the laws of the jurisdiction of its incorporation or formation, and (c) has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

**Section 3.8**. Tax Matters Partner. Richard G. Harvey is hereby designated as the PLLC's "Tax Matters Partner" under Section 6231(a)(7) of the Internal Revenue Code of 1986, as amended (the "Code"), and shall have all the powers and responsibilities of such position as provided in the Code and the Treasury Regulations thereunder. The PLLC members may remove or replace the Tax Matters Partner by a vote of the majority in interest.

**Section 3.9**. **Members To Be Licensed**. Every member of the PLLC shall be licensed and in good standing with the professional body which licenses practicioners of The Profession in New York. Any member who's license to practice in New York shall be suspended or revoked by the licensing body for The Professional shall withdraw from the PLLC once all appeal rights have been exhausted both administratively and through the court system.

## ARTICLE IV

## MANAGEMENT

**Section 4.1**. Management of the PLLC. This PLLC shall be managed collectively by its members; however, the PLLC members reserve the right to appoint managers, who may also be members, at a later date.

## ARTICLE V

## CAPITAL STRUCTURE

**Section 5.1**. Capital Structure. The capital structure of the PLLC shall consist of one class of PLLC Units each having equal rights under all provisions of this operating agreement.

**Section 5.2**. PLLC Units. 1000 PLLC Units shall be issued to the Members, as set forth in Section 3.1 hereof, as part of the initial funding of the PLLC; however, additional PLLC units may be issued pursuant to a Supermajority Vote in interest of PLLC Members.

**Section 5.3**. Capital Contributions.  Each Member shall contribute or shall have contributed, as an initial capital contribution ("Initial Capital Contribution") to the PLLC the amounts set forth below. The break-down between cash and non-cash contributions by the Members is set forth as follows:

**Member Name Initial Capital Contribution**
Richard G. Harvey, $58,500.00, adequacy of which is fully acknowledged herein, pursuant to Purchase Agreement between Richard G. Harvey and Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC dated April __, 2011.

Ricardo S. Sanahon, Jr., $1,000.00.

Paul S. Wong, $500.00.

The Members shall complete their initial capital contributions to the PLLC within 20 days of the date of this agreement unless another date is agreed upon in writing by all PLLC Members. Any Member who fails to make the required initial capital contribution as set forth in this paragraph shall indemnify all other Members of the PLLC for any losses or expenses (including reasonable attorneys fees) that are caused by the failure to make the initial capital contribution as set forth herein. Interest shall accrue against a member upon any unpaid capital contribution at a rate of 7% per annum, compounded annually, commencing from the due date of the initial capital contribution.

**Section 5.4**. Additional Capital Contributions. Members may make additional capital contributions but shall not be required to do so.

**Section 5.5**. Raising Additional Capital. Additional capital may be raised by the PLLC through sales of new PLLC Units pursuant to an affirmative Supermajority Vote of PLLC Members, see Section 5.2 above. Any Member resolution authorizing the raising of additional capital through the sale of PLLC Units shall state, in reasonable detail, the purposes and uses of such additional capital and the amounts of additional capital required.

**Section 5.6**. No Withdrawal of Capital Contributions. Except upon the dissolution and liquidation of the PLLC as set forth herein, no Member shall have the right to withdraw his or her capital contributions. Furthermore, no interest shall be paid upon any member's capital account.

**Section 5.7**. Maintenance of Capital Accounts. An individual capital account shall be maintained for each PLLC Member consisting of the member's capital contributions and (1) increased by that member's share of PLLC profits, (2) decreased by that member's share of PLLC losses, and (3) further adjusted as required or allowed by the Internal Revenue Code (Title 26 of the United States Code) and / or all published Treasury Regulations (Title 26 of the Code of Federal Regulations). In all cases, the capital accounts of the members shall be accounted for in accordance with the Internal Revenue Code (Title 26 of the United States Code) and or all published Treasury Regulations (Title 26 of the Code of Federal Regulations).

**Section 5.8**. Negative Capital Account. If any Member's capital account shows a negative balance at the close of an accounting year, said Member shall contribute sufficient sums of cash to the PLLC to wipe out the Member's negative capital balance within forty five (45) days of receipt of the PLLC's annual financial statements reflecting a negative balance. If the Member fails to make up the negative capital balance to the PLLC within the 45 allotted days, interest shall begin to run on the negative balance at a rate of 8% per annum, compounded annually. The remedy of the PLLC against any member for collection of any debt accruing under this Section 5.8 for failure to repay a negative capital account shall be collectable only against the member's interest in the PLLC and not against any other assets of the PLLC member. The PLLC shall have the right to sell a member's PLLC interest to satisfy any debt accruing under this Section 5.8 free and clear without restriction despite any provision in this operating agreement to the contrary.

**ARTICLE VI**

**ALLOCATIONS AND DISTRIBUTIONS**

**Section 6.1**. Allocation of Profit, Loss and other items to Members. Net profits, net losses, and other allocable items of income, gain, loss, deduction or credit of the PLLC shall be annually allocated among the Members ratably in proportion to each Member's PLLC Unit Percentage. For example, if a Member has a PLLC Unit Percentage of 45%, he or she shall be allocated 45% of all profits or losses (and other allocation items) for any given tax year.

**Section 6.2**. Tax Allocations. In the case of any special tax allocations allowed under the Internal Revenue Code or Treasury Regulations, the method of allocation and formula determined by the Tax Matters Partner shall be followed so long as it complies with state law, the Internal Revenue Code, the Treasury Regulations, and fairly treats each Member. The method of tax allocation selected by the Tax Matters Partner shall be presumed to be "fair to all the members" and any Member or party challenging said allocation on these grounds shall bear the burden of proof.

**Section 6.3**. Distributions. Distributions to the Members shall only be made pursuant to an affirmative vote in interest of the PLLC Members. The resolution attesting to the affirmative vote in interest of the PLLC Members shall state the amounts and dates of distribution to each member; however, no distribution shall be declared or made if, after giving it effect, the PLLC would not be able to pay its debts as they become due in the usual course of business or the PLLC's total assets would be less than the sum of its total liabilities.

## ARTICLE VII

## TRANSFERS OF UNITS; WITHDRAWAL, DEATH, REMOVAL OF MEMBER

**Section 7.1**. Transfer of PLLC Units. No Member shall have the right to sell, convey, assign, transfer, pledge, grant a security interest in or otherwise dispose of all or any part of its PLLC Units other than as follows: Only upon the following conditions may an PLLC Member assign, pledge or grant a security interest in its PLLC Units: (a) the assignment, pledge or security interest shall not entitle the assignee, pledge or security interest holder to participate in the management and affairs of the PLLC, to become a Member, nor to vote the Member's PLLC Units and (b) such assignee, pledgee, or security interest holder is only entitled to receive the distributions the Member would otherwise be entitled to absent the assignment, pledge, or security interest.

To another PLLC Member. Members may freely sell, convey or otherwise transfer their PLLC Units to another Member without prior approval of the PLLC through a vote of the PLLC Members.

To non-LLC Members. Subject to the other provisions of this section, no Member shall be entitled to sell, convey or otherwise transfer its PLLC Units to a non-LLC Member without a prior affirmative Supermajority vote in interest of PLLC Members. Prior to the vote of PLLC Members upon a proposed sale, the Member seeking authorization of the sale or transfer of its PLLC Units shall provide all other PLLC Members with written documents detailing the exact terms of the proposed sale.

Creditors and Spouses of Member. Creditors of a member cannot vote a member's PLLC units nor in any way assume ownership or management rights of a member in the PLLC. At most, a creditor of a member is entitled to seek a court order attaching distributions made by the PLLC on account of the member's PLLC membership interest. A spouse or

former spouse of a member stands in the same position as a creditor of a member under this agreement meaning that the former spouse may not vote a member's PLLC units nor in any way assume ownership or management rights.

**Section 7.2.** Withdrawal of Member.
Members shall have the unilateral right to resign or withdraw at any time from the PLLC. A Member is required to give sixty (60) days written notice to each of the other PLLC Members to initiate a withdrawal. In this notice, the withdrawing Member shall state an effective date for his or her withdraw and said date must be at least sixty (60) days after delivery of notice to all other PLLC members and be the last day of a month (i.e., the 30th or the 31st). Upon receipt of said notice, the PLLC Members shall promptly take any vote required under this agreement for withdrawal of a Member and, if the vote is in a sufficient affirmative percentage as called for under this agreement, the remaining PLLC members shall cause a reasonably prompt preparation of financial statements for the PLLC as of the effective date of withdrawal for said Member.

Upon withdrawal, the withdrawing Member shall receive, in exchange for his or her PLLC Units, the Withdrawal Compensation Amount to be paid within 1 year of the effective date of the Member's withdrawal.

The "Withdrawal Compensation Amount" is defined herein as 100% of the withdrawing member's capital account, such amount is either the initial investment plus nine percent (9%) calculated per annum or $1,000.00, whichever is greater.

Any withdrawing PLLC member possessing a negative capital account upon the effective date of withdrawal shall have a duty to repay the negative balance of his or her capital account to the PLLC upon withdrawal.

Should the PLLC fail to perform upon its obligation under this section to make payments when due, in addition to any other remedies possessed, the PLLC shall be liable to the withdrawing Member for interest upon the amount of any deficiency at the rate of 7% per annum (compounded annually) computed from the date that said deficient payment was due under this agreement.

Upon withdrawal, the withdrawing Member shall take all reasonable steps necessary for the prompt and efficient transfer of patients under the Member's care to the other professionals employed by the PLLC as directed by the PLLC. For a period of thirty (30) days after the effective day of withdrawal, the Member shall continue to take such actions as are reasonably necessary to ensure that patients continue to receive effective professional care.

Upon withdrawal, the withdrawing Member shall deliver all property (including keys, records, notes, data, memoranda, models and equipment) that is in the Member's possession or under the Member's control which is the PLLC's property or related to the PLLC's business.

For a period of two (2) years after withdrawal, the Member shall continue to cooperate fully and assist the PLLC in the collection of any and all accounts receivable for services performed by the Member while employed by the PLLC, at the expense of the PLLC. Further, the withdrawing Member agrees to notify the PLLC, in writing, of any change of address of the Member's business or residence during said two (2) year period. The terms and conditions of this provision shall survive termination of this Agreement.

A withdrawing Member shall retain the right to vote as an PLLC member up until the effective date of his or her withdrawal, at which time, the withdrawing Member's PLLC Units shall be considered transferred back to the PLLC and the person who has withdrawn shall no longer be considered a member of the PLLC. If a withdrawing Member was also a "manager" of the LLC, the withdrawing Member shall resign as a manager immediately upon giving notice of to the other PLLC members of his or her intent to withdraw.

**Section 7.3**. Death of Member.
Upon the death of a Member, the remaining PLLC members shall cause a prompt preparation of financial statements for the PLLC as of the end of the month in which the Member died which shall be the date of death for the deceased Member for accounting purposes under this agreement. For purposes of this section, if PLLC Units are titled in the name of a revocable trust, the trustee of said revocable trust shall be treated as the Member.

The estate of the deceased Member (or his revocable trust if the PLLC Units were so titled) shall receive, in exchange for his or her PLLC Units, the Withdrawal Compensation Amount to be paid within 2 years of the date of the Member's death. The payments shall be made in two equal installments payable at the annual anniversary of the date of death with no interest being due nor owing upon the outstanding amount.

Should the PLLC fail to perform upon its obligation under this section to make payments when due, in addition to any other remedies possessed, the PLLC shall be liable to the deceased Member's estate or revocable trust (as the case may be) for interest upon the amount of any deficiency at the rate of 7% per annum (compounded annually) computed from the date that said deficient payment was due under this agreement.

Upon death, the estate of the deceased Member (or his or her revocable trust, as the case may be) shall have no continuing obligations to the PLLC other than pursuant to state law, this Agreement or other applicable laws or such obligations as expressly assumed by said Member.

**Section 7.4**. Removal of Member.
A Member may be involuntarily removed from the PLLC only under either of the following circumstances: (1) the Member is required to provide services to the PLLC (as reflected in this agreement), said Member is not substantially performing the promised services, and a Supermajority in interest of PLLC Members vote for removal, or (2) the

Member has defaulted upon its obligations under this agreement to make capital contributions (or loans) to the PLLC.

In the case of a removal for failure to perform required services, 60 days prior to any vote to remove, the other PLLC Members shall cause a notice to be issued to the Member in question stating that they shall bring to a vote of the PLLC Members a motion to remove said Member within 60 days for unsatisfactory performance of required services and detail specific instances or tasks that were allegedly not satisfactorily performed. The other PLLC Members shall then give the Member in question a good faith opportunity to cure the deficiencies in performance of services prior to the vote of removal. The period of this good faith opportunity to cure need not extend beyond 60 days. If the Member in question completes a cure within 60 days of receiving the aforementioned notice, then the motion pending before the PLLC Members for removal shall be withdrawn.

In the case of a removal for failure to make required capital contributions, 30 days prior to any vote to remove, the other PLLC Members shall cause a notice to be issued to the Member in question stating that they shall bring to a vote of the PLLC Members a motion to remove said Member within 30 days for non-payment of required capital contributions. The Member in question shall then have 30 days within which to cure the default which shall consist of making all required capital contributions plus 7% per annum interest (compounded annually) upon the amount of any deficiency computed from the date said contribution was due to be made to the PLLC. If the Member in question completes this cure within 30 days of receiving the aforementioned notice, then the motion pending before the PLLC Members for removal shall be withdrawn and the Member in question shall, henceforth, be consider in good standing. If, however, the 30 day cure period expires and the Member in question fails to make a required capital contribution plus interest on the deficiency, then this Member shall be barred from voting on the motion for removal. If, after complying with the above notice and cure provisions, an affirmative Supermajority vote in interest of PLLC Members is made to remove the Member in question, then, as of that moment, this person shall no longer be entitled to exercise any rights, powers or privileges of a Member and his or her PLLC Units shall be considered redeemed by the PLLC. In the case of removal for failure to make require capital contributions, the Supermajority in interest shall be determined without regard to the PLLC interest of the member to be removed. For example, if the member to be removed holds a 20% interest, only a Supermajority percentage of the remaining 80% PLLC interest is required to effect removal.

Upon the affirmative Supermajority vote in interest of PLLC Members to remove a Member, the remaining PLLC members shall cause a prompt preparation of financial statements for the PLLC as of the end of the month in which the resolution was passed by the PLLC Members removing said Member and this shall be the effective date of removal for the Member for accounting purposes only under this agreement.

The removed Member shall receive in exchange for his or her PLLC Units the Withdrawal Compensation Amount to be paid within one (1) year of the effective date of the Member's removal.

Should the PLLC fail to perform upon its obligation under this section to make payments when due, in addition to any other remedies possessed, the PLLC shall be liable to the removed Member for interest upon the amount of any deficiency at the rate of 7% per annum (compounded annually) computed from the date that said deficient payment was due under this agreement.

## ARTICLE VIII

## DISSOLUTION OF THE COMPANY

**Section 8.1**. Dissolution. The PLLC shall be dissolved upon the occurrence of the following event (hereinafter, a "Liquidation Event"): a Supermajority vote in interest by the PLLC Members to dissolve the PLLC. Despite any provision of state law to the contrary, no other event—including (but not limited to) the withdrawal, removal, death, insolvency, liquidation, expulsion, bankruptcy, or physical or mental incapacity of a Member shall cause the existence of the PLLC to terminate or dissolve, lacking super majority vote.

**Section 8.2**. Liquidation.
In addition to a supermajority vote of the members to dissolve per Section 8.1 above, the death of all PLLC members or a court order that the PLLC be dissolved shall constitute Liquidating Events.

Should a Liquidation Event occur, the PLLC shall then be liquidated and its affairs shall be wound up—including preparation of final financial statements and an accounting—by (or at the direction of) the PLLC Members. All proceeds from the liquidation shall be distributed in accordance with state law, and all PLLC Units shall, thereafter, be canceled. Distributions to the Members shall be made in accordance, and proportion, with the Members' relative Capital Account balances.

Final distributions to Members shall not be made until all liabilities have been satisfied and any contingent claims against the PLLC have been resolved. Upon the completion of the liquidation and distribution of the PLLC's assets, the PLLC shall be terminated and the Managers shall cause the Company to execute and file a certificate of cancellation in accordance with state law.

## ARTICLE IX

## MISCELLANEOUS

**Section 9.1**. Amendment of Operating Agreement. This Agreement may be amended by, and only by, a written resolution setting forth in detail the amendment and signed by sufficient Members to reflect a Supermajority vote interest of PLLC Members in favor of said amendment.

**Section 9.2**. Successors. This Agreement shall be binding as upon all successors in interest of the Members which includes, but is not limited to, executors, personal representatives, estates, trustees, heirs, beneficiaries, assignees, nominees, and creditors of the Members.

**Section 9.3**. Counterparts. This Agreement may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart.

**Section 9.4**. Equitable Remedy in Event of Material Breach. Each member agrees that the other members (if any) would be irreparable damaged with no adequate remedy available at law by the material breach of any provision in this operating agreement. Thus, in the event of a material breach of this agreement by a member, any other non-breaching member shall be entitled to enjoin and restrain the breaching member from continued violation this agreement. This equitable remedy shall be in addition to (and not supersede by) any other remedy, such as an action at law for damages, that the PLLC or non-breaching members may have.

**Section 9.5**. Indemnification of Attorneys Fees and Out-of-Pocket Costs. The prevailing party in any lawsuit for an injunction or damages against a member for breach of this agreement shall be indemnified by the losing party for its reasonable attorneys' fees and out-of-pocket costs which in any way relate to, or were precipitated by, the breach that was the subject of the lawsuit.

**Section 9.6**. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Each Member, by signing this agreement, hereby submits to personal and subject matter jurisdiction in the State of New York of any dispute between or among the Members, the PLLC, and the PLLC Managers connected to or regarding the business of, or investment in, the PLLC.

**Section 9.7**. Severability; Standard for Interpretation. If it shall be determined by a court or other competent body that any provision or wording of this Agreement shall be invalid or unenforceable under state or other applicable law, such invalidity or unenforceability shall not invalidate the entire Agreement. Whenever two or more interpretations of the provisions or wording of this Agreement shall be possible, the interpretation or construction which leads to the enforcement and validity of any provision of this Agreement shall be favored and deemed to be the intended interpretation of the parties to this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Operating Agreement as members on the date first written above:

| **MEMBER** | **MEMBER** | **MEMBER** |
|---|---|---|
| _/s/_ | _/s/_ | _/s/_ |
| Richard G. Harvey, D.C. | Ricardo S. Sanahon, Jr. | Paul S. Wong |

IN WITNESS WHEREOF, I have subscribed these Articles of Organization and do hereby affirm the foregoing as true under the penalties of perjury this 26th day of April, 2011.

| _____ | _____ | _____ |
|---|---|---|
| Richard G. Harvey | Paul S. Wong | Ricardo S. Sanahon, Jr. |
| Organizer | Organizer | Organizer |

IN WITNESS WHEREOF, the undersigned hereby affirms that the statements made herein are true under the penalties of perjury.
April, _____, 2011

_____
Ricardo S. Sanahon, Jr., Member